IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

NATHAN SLAUGHTER                                                                                    PLAINTIFF

v.                                          NO. 3:14-cv-00114 JJV

CAROLYN W. COLVIN, Acting Commissioner                                           DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff, Nathan Slaughter ("Slaughter"), commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ"). After considering the arguments of counsel made during a hearing, and having reviewed the record, the Court finds that a remand is necessary.

Slaughter maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole. Slaughter so maintains primarily because his residual functional capacity was not properly assessed.[1] He maintains there is no medical evidence to support the finding that he is capable of performing medium work.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See

---

[1]The Commissioner represents, and the Court finds, that Slaughter is not challenging the assessment made of his mental residual functional capacity. See Pleading 12 at 5 n.2. Instead, Slaughter is challenging the assessment made of his physical residual functional capacity.

Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by "at least some" medical evidence. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010). [quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)].

The ALJ assessed Slaughter's residual functional capacity and found that he is capable of performing medium work.[2] The question for the Court is whether substantial evidence on the record as a whole supports that finding.[3] It is true, as the Commissioner maintains, that Slaughter bears the burden of proving his residual functional capacity, which the Commissioner correctly characterizes as "an administrative finding that is reserved solely to the ALJ." See Pleading 12 at 8. Nevertheless, there must be "at least some" medical evidence to support the ALJ's finding. On the record now before the Court, it cannot be said that the assessment of Slaughter's residual functional capacity is supported by "at least some" medical evidence.

The record reflects that Sumner Cullom, M.D., ("Cullom") saw Slaughter on numerous occasions between November 2008 and January 2012 for complaints of pain

---

[2]Specifically, the ALJ found, in part, the following:

> ... [Slaughter] can lift/carry up to 50 pounds occasionally and 25 pounds frequently. He has no postural limitations, and he has full range of motion of the spine except at the cervical (neck) level. He has no sitting restrictions. He can stand 6 hours in an 8-hour workday, 1-2 hours without interruption. ...

See Transcript at 21.

[3]"Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

primarily in his neck and shoulders. See Transcript at 226-280, 297. Cullom's progress notes reflect that he diagnosed Slaughter with, inter alia, a supraventricular tachycardia and a cervical strain and prescribed medication for the pain.

It is difficult to determine what precise weight the ALJ gave Cullom's findings and observations. It appears that the ALJ gave Cullom's findings and observations reduced weight because he did not offer an opinion, statement, or recommendation regarding whether Slaughter is disabled and unable to perform substantial gainful activity. As Slaughter correctly points out, though, there is nothing to suggest that Cullom was ever asked for such an opinion, statement, or recommendation. Moreover, Cullom cannot be faulted for failing to offer such a pronouncement because it typically involves an issue reserved exclusively for the ALJ and is not the type of medical pronouncement accorded any significant weight. See Ellis v. Barnhart, 392 F.3d 988 (8th Cir. 2005) (medical source opinion that claimant "disabled" or "unable to work" involves issue reserved for ALJ and accorded no controlling weight).

In January 2012, Slaughter's medical records were reviewed David Hicks, M.D., ("Hicks") a state agency medical consultant. See Transcript at 285-292. Hicks opined that Slaughter is capable of performing light work with "only occasional overhead reaching." See Transcript at 292. A second state agency medical consultant, Valeria Malak, M.D., subsequently affirmed Hicks' assessment. See Transcript at 333.

The ALJ accorded "only some weight" to the assessments of the state agency medical consultants. See Transcript at 24. The ALJ did so because "[e]vidence adduced at the hearing level shows [Slaughter] can perform [work] at the medium exertional

level." See Transcript at 24. The ALJ failed, though, to explain or identify what "evidence adduced at the hearing level" shows Slaughter can perform medium work. Assuming that the phrase "evidence adduced at the hearing level" simply means the testimony offered during the administrative hearing, the Court has carefully reviewed that testimony. See Transcript at 38-73.[4] Two observations about the testimony are in order. First, there was little medical evidence obtained during the administrative hearing. Second, the medical evidence that was adduced during the administrative hearing is inconclusive; in fact, there is some indication that Slaughter's pain is severe as he testified that he has taken hydrocodone in the past. See Transcript at 45.

In August 2012, Slaughter presented to the Great Rivers Medical Center ("Great Rivers") emergency room complaining of neck pain. See Transcript at 366-374. A CT scan of his cervical spine was performed, and neck pain and degenerative joint disease of the neck were diagnosed. He was prescribed medication. He returned to Great Rivers on at least two other occasions complaining of pain in his neck and shoulders. See Transcript at 357-365, 340-348. Physical examinations revealed cervical spasms and a limited range of motion in his shoulder. Medication was again prescribed.

It is difficult to determine what precise weight the ALJ gave the medical findings made by the professionals at Great Rivers. It appears that the ALJ gave the findings little weight as he made little mention of them in his written decision.

---

[4]A disc containing "records" was admitted into evidence during the administrative hearing. See Transcript at 35. It is assumed that the "records" were the medical records now before the Court.

The evidence outlined above is the bulk of the medical evidence in the record, and the ALJ discounted virtually all of it to some degree. What medical evidence, then, supports his finding that Slaughter is capable of performing medium work? There is not "at least some" medical evidence to support the finding, and that is why a remand is necessary. Upon remand, the ALJ shall re-assess Slaughter's residual functional capacity. In making the re-assessment, the ALJ is encouraged to send Slaughter for a physical consultative examination, much like the ALJ did when he sent Slaughter for a mental consultative examination. See Transcript at 300-304. In addition, if necessary, the ALJ shall obtain additional diagnostic testing.

In remanding this case, the Court finds it advisable to briefly address the other reason for remand advanced by Slaughter. He maintains that his credibility was not properly adjudged because the ALJ considered only the medical evidence. The Court has reviewed the record as a whole and is concerned that the ALJ did not give adequate consideration to the non-medical evidence in adjudging Slaughter's credibility. Upon remand, the ALJ shall re-evaluate Slaughter's credibility, giving due consideration to the non-medical evidence.

Given the foregoing, the Commissioner's decision is reversed, and this case is remanded. The remand in this case is a "sentence four" remand as that phrase is defined in 42 U.S.C. 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991). Judgment will be entered for Slaughter.

IT IS SO ORDERED this 8th day of May, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE